IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:22-CV-00019-KDB-DCK

| | |
|---|---|
| KENNETH SCOTT,<br><br>    Plaintiff,<br><br>v.<br><br>ABOVE AND BEYOND RETAIL SERVICES, INC. AND ROBERT C. ABSHER,<br><br>    Defendants. | **ORDER** |

**THIS MATTER** is before the Court on Plaintiff's Unopposed Motion for Approval of Collective Action Settlement. (Doc. No. 30). The Court has carefully considered this motion and the memorandum and exhibits offered in its support. While the Court certainly encourages the Parties in any action to reach an amicable resolution of their dispute, for the reasons discussed below, the Court cannot approve the Parties' proposed settlement and notice in its current form. Therefore, the motion will be denied.

In an FLSA action, the Court is required to ensure that any settlement is not only acceptable to the representative plaintiff and the defendant(s) but is also fair to the putative members of the class. This duty is particularly important in a case such as here where the first notice being given to the class concerning the action is of its settlement. In brief summary, although the Court finds that the collective action itself and the total amount of the settlement, attorneys' fees, expenses and service award are reasonable, the process by which the settlement proceeds are proposed to be offered to Defendants' current and former contractors / alleged employees is not fair. Indeed, the settlement risks being illusory because only those who agree in advance to the settlement and

1

release – without even being told what they are entitled to receive – will be actually paid the agreed settlement. Simply put, if the settlement is as reasonable as the Parties urge the Court to find, then the allegedly harmed individuals (whose identity and proposed payment amounts are already known) should be offered their settlement money without imposing unnecessary burdens that appear to be designed simply to discourage participation in the settlement.

## I. LEGAL STANDARD

"It has long been clear that the law favors settlement." *United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992); *see also Roldan v. Bland Landscaping Co., Inc.*, No. 320CV00276KDBDSC, 2022 WL 17824035, at *2 (W.D.N.C. Dec. 19, 2022); *Reynolds v. Fid. Investments Institutional Operations Co., Inc.*, No. 1:18-CV-423, 2020 WL 91874, at *3 (M.D.N.C. Jan 8, 2020); *In re Paine Webber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (noting the "strong judicial policy in favor of settlements, particularly in the [class] action context."); William B. Rubenstein, 4 Newberg on Class Actions § 13.44, n1 (5th ed. Dec. 2019) (collecting cases). Towards that end, settling parties routinely seek judicial approval of proposed FLSA settlements to ensure fairness and to give effect to the FLSA releases, and courts approve those agreements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Roldan*, 2022 WL 17824035, at *4. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1354-55 (11th Cir. 1982).

Still, in reviewing a proposed settlement, the Court must act in effect as a fiduciary of the class members. *Sharp Farms v. Speaks*, 917 F.3d 276, 293-94 (4th Cir. 2019). Therefore, the Court may approve a class settlement only if it is "fair, reasonable, and adequate." *Id.* at 1353-54 ("[T]he district court may enter a stipulated judgment after scrutinizing the settlement for fairness.")

2

(citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 113 n.8, 66 S.Ct. 925 (1946)); *Taylor v. Progress Energy, Inc.*, 415 F.3d 264, 371 (4th Cir. 2005); *See* Fed. R. Civ. P. 23(e)(2). More specifically, in evaluating whether a settlement is reasonable, adequate, and fair, courts generally consider: (1) the posture of the case at the time the settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in FLSA class action litigation. *See Roldan*, 2022 WL 17824035, at *3. (citing e.g., *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-159 (4th Cir. 1991)).

While "fairness" has been questioned as a manageable standard in other contexts, *see Vieth v. Jubelirer*, 541 U.S. 267, 268, 158 L. Ed. 2d 546 (2004),[1] it is at least clear that fairness "is a relative, not an absolute, concept. It is fairness with reference to particular conditions or particular results" *Snyder v. Com. of Mass.*, 291 U.S. 97, 116, 78 L. Ed. 674 (1934), *overruled on other grounds* by *Malloy v. Hogan*, 378 U.S. 1, 12 L. Ed. 2d 653 (1964). Thus, a "fair" settlement, including the process for implementing the settlement, requires full consideration of the legitimate rights and obligations of all the participants, taking into account the totality of the circumstances.

Moreover, for FLSA collective actions, district courts have broad discretion regarding the details of the notice sent to potential opt-in plaintiffs. *Graham v. Famous Dave's of Am., Inc.*, No. CV DKC 19-0486, 2022 WL 1081948, at *5 (D. Md. Apr. 11, 2022) (holding that unclear and/or inaccurate notice did not provide sufficient information for potential plaintiffs to make informed decisions about whether to participate in a FLSA collective action); *Lee v. ABC Carpet & Home*,

---

[1] As Justice Scalia put it for the plurality in *Vieth*: "'Fairness' does not seem to us a judicially manageable standard.... Some criterion more solid and more demonstrably met than that seems to us necessary . . . to meaningfully constrain the discretion of the courts, and to win public acceptance for the courts' intrusion into a process that is the very foundation of democratic decision making." 541 U.S. at 291; *Rucho v. Common Cause*, 204 L. Ed. 2d 931 (2019).

236 F.R.D. 193, 202 (S.D.N.Y. 2006) (citing *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). "The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide accurate and timely notice concerning the pendency of the collective action, so that potential plaintiffs can make informed decisions about whether to participate." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F.Supp.2d 445, 450 (S.D.N.Y. 2011) (cleaned up).

## II.     FACTS AND PROCEDURAL HISTORY

Plaintiff is a former "Merchandising and Fixture Installer" who contracted with Defendant Above and Beyond Retail Services, Inc. ("A&B") to perform installations at various client locations in several states, including Pennsylvania, New York, New Jersey, Massachusetts, and Nevada. Plaintiff alleges that he and other similarly situated Merchandising and Fixture Installers were misclassified as independent contractors and were not compensated for all hours worked, including additional compensation for hours worked in excess of forty (40) in a workweek. *See* Doc. No. 1 (Complaint). Based on these allegations Plaintiff asserts claims against Defendants under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. and the wage payment laws of the states in which he worked for unpaid overtime wages, liquidated damages, attorneys' fees, costs, and interest. He has filed his claims as a putative collective and class action for himself and all similarly situated Merchandising and Fixture Installers. Defendants deny these allegations and maintain that all Merchandising and Fixture Installers were properly classified as independent contractors and further deny that the individual Defendant Robert Absher was a "joint employer" liable for Plaintiff's claims. *See* Doc. No. 24 (Answer).

Following the filing of Plaintiff's Complaint, the Court entered Orders staying the litigation to afford the Parties the opportunity to engage in settlement discussions. *See* Doc. Nos.

9, 20, 22. Those settlement discussions, conducted by experienced counsel on both sides, ultimately led to a Settlement Agreement, which is the subject of the pending motion.

The Settlement Agreement provides for payments to approximately 950 Merchandising and Fixture Installers. The "FLSA Collective Members" (the "Collective" or "Class") are defined to include:

> All Merchandising and Fixture Installers who contracted with Defendants and were classified as independent contractors at any time within the period of three years prior to the commencement of this action and the date of judgment, to the extent they are included in the list attached to the Settlement Agreement as Exhibit A.

Doc. No. 29 (Settlement Agreement) at ¶ 3. The Settlement Agreement obligates Defendants to create a Gross Settlement Fund of $200,000.00, but expressly conditions the actual final payment obligation on how many Collective members "submit timely claims" as defined in the Agreement. *Id*. at ¶ 4. To the extent any Collective member does not file a claim, Defendants – not the Collective – retain their designated payment. *Id.* Specifically, the settlement fund is allocated as follows:

- $124,492.43 for Plaintiff and Collective Members' FLSA claims;[2]
- $66,666.67 for Class Counsel's attorneys' fees;
- $2,000.00 for named Plaintiff Scott as a service award and consideration for a general release;
- $1,314.90 for Class Counsel's litigation costs and expenses; and
- $5,526.00 for Analytics, LLC's services and expenses for settlement administration. *Id.*

---

[2] Each Collective member's settlement share of the settlement fund is calculated based on the number of weeks in which each member performed services and estimated alleged overtime damages during the applicable statute of limitations. *Id.* at ¶ 4(b). The payments made to Collective members will be deemed non-wage payments and paid without any withholding and subject to reporting as non-employment income reported on IRS Form 1099-MISC. *Id.* at ¶ 4(c).

5

The Settlement Agreement includes a broad release of claims to which Collective members must agree in consideration of the settlement payment. The release provides, *inter alia*, that "all members of the FLSA Collective who timely submit Claim Forms" are deemed "to have forever released, discharged, relieved, covenanted not to sue or proceed in any way against" Defendants and listed related entities and individuals "from any and all claims, actions, causes of action (in law or equity), suits, contentions, damages, losses, injuries, obligations, liabilities, demands, debts, judgments, costs and expenses (including attorneys' fees), known or unknown, liquidated or unliquidated, absolute or contingent, accrued or not accrued, which they have, will have, had, ever had, claim to have, claim to have ever had, or could in the future claim to have, against any of the Releasees for unpaid wages under the FLSA, that were or could have been asserted in the lawsuit." The release also includes broad language that provides that the Collective members similarly release claims "for unpaid wages under state law … that were or could have been asserted in the lawsuit based on the facts alleged therein…." *Id.* at ¶ 6.

Finally, with respect to the process for notifying the Collective of the settlement, the Settlement Agreement provides that a "Notice Administrator" will send notice of the settlement "by first-class mail with a pre-paid return envelope and email (where available) to all members of the FLSA Collective in the form [attached as an Exhibit to the Agreement]." However, the proposed form of notice does not inform the Collective member how much he or she is entitled to receive in the settlement. *See* Doc. No. 29-4. Instead, the Collective member must agree to the settlement through the required "Claim Form" – including the release – prior to finding out the amount of their settlement payment (which they only learn when they receive their settlement check). *See* Doc. Nos. 29-2, 29-4. Each member is given sixty days from the date the notice is mailed to return his or her "Claim Form" by mail or online. *Id.* Again, "only those Collective

6

members who timely return a fully completed Claim Form" are "entitled to or have any interest in their *pro rata* share" of the settlement fund. *Id*. at ¶ 5.

Plaintiff seeks the Court's approval of the Parties' Settlement Agreement pursuant to 29 U.S.C. § 216, *et seq.*. Specifically, the pending motion asks the Court to "(1) certify this case as an opt-in collective action for settlement purposes on behalf of the approximately 950 Merchandising and Fixture Installers who contracted with Defendant A&B as independent contractors at any time within the period of three years prior to the commencement of this action and the date of judgment; (2) find that the Parties' Settlement Agreement fairly and reasonably resolves a *bona fide* dispute; (3) approve the proposed Service Award for the Named Plaintiff Kenneth Scott; (4) find that the Parties' proposed Notice, Claim Form, and plan for distribution and settlement administration include content and utilize a process that is fair, adequate and reasonable for settlement of an FLSA collective action; (5) approve $66,666.67 in attorney's fees (one-third of the common fund), plus reimbursement of their stipulated litigation costs; and (6) dismiss this action with prejudice while retaining exclusive jurisdiction as necessary to implement the terms of the Settlement Agreement." The matter is now ripe for the Court's decision.

### III. DISCUSSION

As noted above, in deciding whether to approve the Parties' proposed settlement, the Court must determine if it is "reasonable, adequate and fair." What is "fair" in these circumstances? Fairness means more than mere legality or the absence of bad faith.[3] Rather, a finding of fairness ultimately depends on whether the settlement reflects an outcome that fully considers the legitimate interests and circumstances of all concerned. Similarly, a fair settlement "process" is

---

[3] Indeed, a standard of simple "permissibility" would be wholly circular in this context where the parties can lawfully reach any resolution that the Court will approve.

7

marked by transparency, adequate disclosure, and an accessible and effective path to attain its benefits.

The Court finds that the substantive terms of the Settlement Agreement are reasonable, adequate, and fair. First, to briefly address the collective nature of this action, the FLSA allows for one or more alleged employees to bring an action "on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b); *Hoffman-La Roche Inc. v. Sperling*, 493 U.S.165, 170 (1989). To serve the "broad remedial purpose" of the FLSA, courts have the power to authorize notice to other potential class members of their rights to "opt-in" to a pending collective action. *Id*. While courts typically apply a two-stage process for determining whether to certify an FLSA collective, *see e.g. Roldan v. Bland Landscaping Co*., 341 F.R.D. 23, 28-29 (W.D.N.C. 2022), here the parties request that the Court apply a one-step process of certifying the proposed FLSA Collective for settlement purposes and authorizing payment to the Collective members and dismissal of the action. *See Benoskie v. Kerry Foods, Inc*., 2020 U.S. Dist. LEXIS 177538, at *3-4 (E.D. Wis. Sep. 28, 2020) (applying one-step approval process where parties sought certification of FLSA collective for settlement purposes, and did not seek certification of a Rule 23 class); *Osman v. Grube, Inc*., 2018 U.S. Dist. LEXIS 78222, 2018 WL 2095172, at *2 (N.D. Ohio May 4, 2018) ("A one-step settlement approval process in FLSA collective actions is appropriate.").

The Court finds for the purposes of this settlement that based on the agreement of the parties[4] and the alleged facts (i.e., that the A&B employees worked at the same kind of job sites and were all classified as independent contractors) the named Plaintiff and the Collective

---

[4] Defendants agree that the members of the Collective are similarly situated only for the purposes of this settlement.

8

Case 5:22-cv-00019-KDB-DCK     Document 34     Filed 06/22/23     Page 8 of 15

members are similarly situated in accordance with the requirements of the FLSA. Thus, the Court would conditionally certify this matter as a collective action for settlement purposes so long as the settlement was otherwise to be approved.[5] *See Jimenez-Orozco v. Baker Roofing Co.*, 2007 U.S. Dist. LEXIS 93860, *17-21 (E.D.N.C. Dec. 20, 2007 (finding similar evidence sufficient to certify collective for settlement purposes).

Second, the overall settlement amount is the product of arm's length negotiations between the Parties' experienced counsel and represents a substantial portion of the Collective's alleged damages. In the list of Collective members and their payment amounts attached to the Settlement Agreement, Doc. No. 29-1, the total amount of "Alleged Damages" is $224,798. Thus, the $200,000 settlement fund is approximately 89% of the amount of total damages. Further, Defendants contend that $200,000 is the maximum amount that they can actually pay due to their financial circumstances. Accordingly, even though the litigation is at its earliest stages and there has been limited formal discovery,[6] the Court finds $200,000 is a reasonable total settlement amount for Plaintiff's disputed claims (so long as it is genuine in effect as discussed below).

Third, the amount of requested attorneys' fees is reasonable. The FLSA allows for a plaintiff to recover his/her attorneys' fees and expenses under the statute's fee-shifting provisions. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); *Lane v. Ko-Me, LLC, Case*, 2011 WL 3880427, at *2 (D. Md. 2011). Plaintiff's counsel has requested attorney's fees of $66,666.67, equivalent to one-third of the Gross

---

[5] As an additional threshold matter, the Court would also find that a bona fide FLSA dispute exists in this action as described above.

[6] The Parties represent that they have engaged in substantial informal discovery, including exchanging information on the employees' hours, travel records, etc. to calculate potential damages.

Settlement Amount. Similar fee requests have been approved as reasonable in this Circuit. *See Hackett v. ADF Rest. Invs.*, 259 F. Supp. 3d 360, 368-69 (D. Md. 2016) (awarding one-third of settlement amount); *McClaran v. Carolina Ale House Operating Co., LLC*, 2015 WL 5037836, at *5 (D. S.C. Aug. 26, 2015) ("After reviewing awards in other wage and hour cases brought as FLSA collective actions and class actions, it appears that the percentage requested here is reasonable. In a number of cases, courts found that a fee-award of one-third of the settlement fund was reasonable."). Further, to date, Class Counsel has spent over 225 hours representing the Plaintiff and the putative class and incurred lodestar fees of $110,290.00. *See* Doc. No. 32 at ¶ 22. This lodestar amount also supports the amount of attorneys' fees to be paid under the Settlement Agreement. Therefore, the Court would approve Plaintiff's counsel's attorneys fee request as reasonable.

Similarly, the FLSA provides for the reimbursement of costs, expenses and payments to settlement administrators. *See* 29 U.S.C. § 216(b); *Hackett*, 259 F. Supp. 3d at 369. Plaintiff seeks $1,314.90 for Class Counsel's litigation costs and expenses. Also, Plaintiff seeks Court approval for the appointment of Analytics, LLC, as the Settlement Administrator, who will issue settlement checks and handle settlement-related administrative work (such as tax reporting). *See* Doc. No. 29 at ¶ 4(e). The Settlement Administrator's fees and expenses are to be paid from the gross settlement fund and capped at a total cost of $5,526.00. *Id.* The Court finds that these relatively modest ancillary expenses and payments are reasonable.

Finally, the Court finds that Plaintiff's requested Service Award of $2,000.00 is reasonable. *See Id.* at ¶ 4(d). At the end of a successful collective action, it is common for trial courts to compensate class representatives for the time and effort they invested to benefit the class. *See Roldan*, 2022 WL 17824035 at *7. A service award of $2,000.00 is well within the range of

10

reasonable incentive awards approved by the courts; indeed, it is at the lowest end of the range. Thus, a Service Award of $2,000.00 to Kenneth Scott would be fair and reasonable.

In sum, the substantive terms of the proposed settlement, including the total settlement fund, attorneys' fees, litigation and settlement expenses and service award, are reasonable, adequate and fair and would be approved if the Court found that the settlement was otherwise fair. However, as discussed below, the Court finds that it is not. The settlement process – how notice is given and payments are paid to the class - fails to meet the test of fairness and, in fact, risks substantially undermining the substantive reasonableness found above.

Again, a fair settlement process is marked by transparency, adequate disclosure, and an accessible and effective path to attain its benefits. Yet, the process proposed by the Parties does not reflect any of those virtues. Indeed, the structure of the settlement itself ensures that the Parties either benefit from discouraging Collective members from joining the settlement (in the case of the Defendants who retain the settlement proceeds of those who don't return claim forms) or have no monetary interest in encouraging participation (in the case of Class Counsel and Plaintiff who get their full payments up front and without regard for how many Collective members join). Requiring that all settlement funds be paid out (other than deductions for those members who affirmatively decline to participate in the settlement)[7] will create incentives for the Parties to

---

[7] It is fair for Defendants to reduce their settlement fund to account for Collective members who affirmatively decline the settlement as those members may more likely file claims in the future. Defendants should not be required to potentially pay for those workers twice.

11

encourage participation or, at a minimum, eliminate the incentive for Defendants to discourage participation.[8]

Moreover, context is important. Unlike many actions in which putative collective and/or class members have received one or more notices about their potential claims prior to a proposed settlement, the Collective members here have not yet received any notice of this action. Therefore, when a Collective member – who presumably has no legal training or other familiarity with FLSA actions – receives the proposed letter and/or email he or she may well be skeptical of the legitimacy of a notice that they have "won" or are entitled to receive money in a lawsuit against a company with which they currently or formerly work(ed). This is particularly true when the notice is coming from an unknown "settlement administrator" or lawyer rather than the company itself.

The lack of prior notice to the Collective members about the Plaintiff's claims has other significant implications. Most directly, it compounds the need for full transparency and robust disclosure. The proposed notice falls short in that regard; specifically, in the absence of information in the notice describing how much the Collective member will receive in the settlement and how that amount had been calculated. The Parties know this information and it should be provided to Collective members, each of whom has the right to make an informed choice on whether or not to participate in the settlement. *See Anderson v. Team Prior, Inc*., No. 2:19-CV-00452-NT, 2021 WL 3852720, at *12 (D. Me. Aug. 27, 2021) (refusing settlement approval where

---

[8] With respect to both current and former workers there is a risk that Collective members will be reluctant to participate in a settlement in which the company directly benefits if they do not join in the lawsuit. Although the settlement notice includes language informing Collective members that retaliation against those who participate would be unlawful, the presence of this language is likely to, as a practical matter, be as much of a reminder of the risks of joining the settlement as it is a comfort to the workers. However, if the Defendants agree to pay the settlement funds regardless of who joins the settlement then it becomes both more likely that Collective members agree to participate and that the Defendants encourage at least their current workers (who may otherwise be the most reluctant) to participate.

12

the proposed notice "does not tell [participants] how much to expect in terms of payment so they have no way of making an informed decision about what they will receive compared to what they are giving up when they sign and return the enclosed claim form waiving all federal and state wage claims"); *Graham*, 2022 WL 1081948, at *3 (declining to approve settlement where claim form attached to the proposed notice failed to include possible payment amount).

Beyond denying the Collective members necessary information to assess the settlement, hiding the amount of a Collective member's already agreed settlement amount further appears designed to discourage participation in the settlement, except for those who will benefit least from it. The listed settlement payments for Collective members range from over $1700 to $5.00. For those Collective members who will receive a significant payment (approximately 300 will receive more than $100), they would be more likely to participate if they were told in advance the amount of their payment. Therefore, not providing the information means Defendants will pay out less of the settlement fund. On the other end of the spectrum, the more than 340 Collective members who will receive only $5 are more likely to send in a claim form if they don't know how much they will receive, thereby buying Defendants a full release for almost nothing.[9]

Further, the lack of an attempt at prior notice makes it less likely that the single notice contemplated by the proposed settlement will actually be received by Collective members. While Defendants should have valid contact information for those currently working with the company, former workers would be more likely to be found if there had been already been an effort to

---

[9] While the "alleged damages" of these Collective members is listed as $0.00, the apparent goal of providing a minimal payment to these members is simply to garner a release because it is likely that it costs more to undertake this process than to just exclude them from the defined settlement group based on the lack of a viable claim.

13

communicate with them. Thus, in addition to mail and email notice, the settlement process should have required that notice by text (based on the last phone number available) be given.

Accordingly, considering the totality of the relevant circumstances, the Court finds that the settlement process and notice proposed by the Parties is not reasonable, adequate or fair and will not be approved in its current form.

However, the Court cannot (and would not) impose a settlement on the Parties. Nor will it "negotiate" with the Parties on the terms of the agreement or the notice and payment process. Nevertheless, as guidance, the Court expects that the following elements will need to be part of a fair settlement to conclude this action: 1) Defendants must agree to pay a sum that is fair and certain to the class (with any "unclaimed" settlement payments going to other class members, the named Plaintiff (perhaps up to a set amount) or some other fund or recipient);[10] 2) attorneys' fees, expenses and service awards should be reasonable in light of the settlement; 3) notice to the class should be provided by mail, email and text where possible; 4) notices to the class should clearly state the amount of money the class member will receive in the settlement[11]; and 5) defendants are entitled to a reasonable release of claims (such as included in the current agreement) in consideration of any settlement payments.

Again, the Court does not want to discourage the Parties from resolving their dispute by agreement. Much to the contrary, the Court hopes the Parties can finalize a settlement and encourages their efforts. But, it must be a settlement, process, and notice that the Court can properly approve.

---

[10] As discussed above, Defendants may retain promised settlement payments for class members who affirmatively decline to participate in the settlement.

[11] As an efficient option, the settlement check itself could be included with the written notice - with cashing the check being the indication of agreement to the settlement and release.

14

Case 5:22-cv-00019-KDB-DCK    Document 34    Filed 06/22/23    Page 14 of 15

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Plaintiff's Unopposed Motion for Approval of Collective Action Settlement. (Doc. No. 30) is **DENIED**; and

2. The Parties are directed to confer and report to the Court within 14 days of the date of this Order as to whether they believe a revised settlement will be presented to the Court for approval.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: June 22, 2023

Kenneth D. Bell
United States District Judge